And may I say that I don't know why you've decided to divide the time up. It's not a good idea, but if you're insistent on it, I guess you watch your own time. Yes, Your Honor. Good afternoon. May it please the Court. Deba Skomra on behalf of Petitioner Henry Calderon-Rodriguez. I'll reserve one minute for rebuttal. Could you speak up, please, or speak more into the mic? My two main points for today are that a reasonable fact finder would have been compelled to conclude that Petitioner was either incompetent or that it wasn't clear, and further safeguards and evaluation were needed. And two, that Petitioner was prejudiced without counsel and deserves another chance to prove whether he merits relief. Petitioner presented an issue of incompetency through medical evidence as well as testimony. On June 11, 2015, the date of both his competency inquiry and his merits hearing, he submitted a written statement listing several medications he was taking, including 150 milligrams of trazodone to treat depression. I'm afraid I'm having trouble understanding you, and it may be because you're not speaking into the mic, so maybe you can try a little more. Thank you. Yes, Your Honor. Of trazodone to treat depression and anxiety disorder, as well as 40 milligrams of citalopram, another antidepressant medicine. This is triple the dosage of the medication listed in the DHS Mental Health Review from July 2014, which only listed the trazodone at that time, and double the dosage of his February 2015 prescriptions of citalopram. He went on to describe some of the effects this was having on him. He wrote, I feel like I'm under the influence of drugs. I need an attorney to help me. I feel like I cannot represent myself like I used to. When was that? This was in his written submission on June 11, 2015. After or before the second hearing? This is the second merits hearing on remand. At the time of the second appearance? At the time of the second hearing, yes, Your Honor. Is there anything in the record of the effect this increased medication had or might have had on him? He described some of those effects. He said, I can't concentrate. You mean self-diagnosis? That's all there is? No, Your Honor. There are his prescriptions, which also listed. I know that, but is there anything that says what the increase resulted, what they did to him? No, Your Honor. That wasn't developed on the remand. We didn't have full access to the DHS medical records. There was only the report from 2014. Well, I mean, that's the part I found odd, in that to me the big hole here is that the last record was a year old. At the time of the hearing. From DHS, yes, Your Honor. DHS. It appeared that there had to be more because we know he was prescribed more medicine and we know another appointment was scheduled. Precisely. But you've never really made that the center of your argument. I mean, it seems to me if there's a procedural problem here, that they didn't bring forward a sort of relevant medical information because it was from the wrong time period. Yes, Your Honor. It's that, as well as the disregard of the evidence that Petitioner himself submitted. The judge wrote in her decision that the respondent did not claim to suffer from a mental health issue that affected his ability to participate in the hearing at any point in the proceedings, yet he testified on June 11th as well and said that his PTSD was affecting him considerably. It was in some way overcoming his limits and that he would like to contribute more effectively. But believe me, I feel like my mind is sort of closed. What exactly are you saying that the immigration judge should have done? Is it just she didn't ask enough questions or that she should have done something outside of the hearing? There's a lot more that the judge could have done, Your Honor. She could have held DHS to its obligation to produce more records that were evident on their face that they would exist. And where are you getting this obligation from? That's from HCFR 1240.2a, as well as MAM at 480, on the DHS obligation to produce the records that would be relevant to this issue for the judge's determination. The judge also relied on this stale DHS report, mistakenly listing it as having been dated from July 2015 in her decision. Do you think the judge actually thought it was more recent than it was? I think she did, Your Honor, which is why she may have repeatedly been referring to his prior PTSD and not understanding that what he's talking about is his current condition. She also failed to help develop the record. When he expressed that he had been persecuted, she just left it at that, without maybe informing him of his ability to renew his application for asylum and withholding, nor considering it as a factor in her discretionary determination for cancellation. But on the question of competence, though, what exactly more should she have done? Updated the DHS file or asked him more questions, or what exactly? Yes, she could have asked him more questions about the effects that these medications were having on him and actually taken that into consideration. She instead invents a predisposition to finding competency. At both the merits hearings, she repeatedly expressed frustration at the fact of the remand, as well as confusion over what she was expected to do. In fact, even setting the case straight for merits begs the question. It assumes the premise of competency. Where is the – you said that she had the wrong date in her opinion. Where is that? I hadn't noticed it. I don't remember you mentioning it. At 43, Your Honor. At 43? Yes, of the record. On the point of prejudice, Your Honor, the – 43 in the record. The Petitioner presented inconsistent testimony regarding his waiver of counsel. He at one point said that he and his wife couldn't afford counsel. Another time he wrote that he would need to proceed on his own because the Northwest Immigrants Rights Project attorneys weren't going to be able to help him. Yet he in between wrote a letter to the courts saying that he would need time to find an attorney. And, again, on the day of the merits hearing, he submitted a written statement saying that he needed an attorney to help him. This doesn't amount to a knowing involuntary waiver of the right to counsel. Well, I mean, the problem is that there's at least absence, some rights under the Franco decision, no right to counsel in the criminal sense. So my understanding of what he was saying is I can't do this myself, but I don't have any money to pay a lawyer. Correct, Your Honor. But at some point, don't they have – it may not be willing, but it's knowing involuntary. If you just say you can't afford to pay it, it's unfortunate. And maybe not the way we ought to be running the system, but it's the way we're running the system. But where there is also an issue of potential incompetency, it makes the ability to even knowingly involuntarily waive that right even more questionable. That becomes certainly the right because the question is was there a question of competency. Yes, Your Honor. He also demonstrated an inconsistent ability to represent himself. He didn't really present evidence that was relevant to discretion on remand, which would have been difficult to do since the IJ refused to define what discretionary factors meant. She said, you certainly know the discretionary factors, as I fully discussed in your prior proceedings. And to expect a pro se applicant with limited education and potential incompetency issues to be able to adequately recall and apply a legal definition from two years earlier is unreasonable. As I mentioned, he didn't know to renew his asylum or withholding application, and the judge didn't assist him with that, despite her regulatory obligation. The other evidence that could be developed on remand with the assistance of a counsel would be perhaps an independent psychological evaluation petitioner where his mental illness could be a mitigating factor against his convictions. He could establish proof of rehabilitation, the lack of recidivism, perhaps any attendance he's had of AA meetings during the last five years, the status of the post-conviction relief for which he submitted evidence in 2015, any documentation regarding the treatment of people in El Salvador who suffer from mental disorders, and whether he would have access to those medications in El Salvador. All of these types of evidence could be available on remand with the assistance of counsel. Mr. Calderon presented indicia of competency that triggered the rigorous procedural requirements of matter of MAM and Franco v. Holder. The IJ committed clear error in failing to find the petitioner was incompetent to represent himself and had not knowingly or voluntarily waived his right to counsel. Thank you, Your Honor. So we're not having the second argument? That's the rebuttal. Really? Okay, that really doesn't make sense, but thank you. Yes. May it please the Court, Sarah Bird on behalf of the Respondent, the Attorney General. The Court should deny the petition for review because the immigration judge properly assessed petitioner's competence under matter of MAM and reasonably concluded that he was competent to meaningfully participate, as required under matter of MAM, and that he was not a class member. Well, what about the fact that the information she had was a year old, was apparently not accurate, at least because he was taking other medication, and although I can't find it, it appears she got the date wrong. Is that right, that she got the date wrong? I believe with regard to the date, she mentions the date that it was filed, and got that correct, but does not, as far as I can see, and I was looking just now, specifically mention the date of the physical examination. At page 6 of her, it's written, but it's called the oral decision. At page 6 she says, And that was the date that it was filed. Oh, that's peculiar. I mean, a mental health review dated July 24, 2015, one would think meant a review on July 24, 2015. She's listing the exhibit, but you're right, you're absolutely right, it's ambiguous, and in her actual substance, where she's not listing the exhibit, she notes that petitioner was first seen by the mental health provider when he came into detention in 2012, that's when he was diagnosed with active PTSD, and then that, after the remand of his case from this court, and it got remanded back to the immigration judge, the DHS requested another mental health review, and that's the one that says, that was filed in 2014, but was actually from a follow-up, I mean, excuse me, it was filed in 2015, but was from a follow-up appointment in 2014, and that one says that he has no active PTSD symptoms, has some situational depression and some sleep disorders. But we know, we know that there was some change. Absolutely, we know he was receiving... Between that year and this period. We know that he was receiving ongoing mental health treatment. No, he was getting more, he was taking more of a dose of the one medication, and he was taking another medication, which hadn't even been mentioned in that earlier report, right? We know, based on what he was filed, yes, that his medications had changed, but the purpose of the mental health treatment and the medication is to treat someone, not to... And that's why he's on more medication might have mean that when, you know, the 2014 report says that the PTSD wasn't active anymore, maybe it had become active again. And that's why he's on more medication, and maybe the more medication isn't enough, we just don't know. Well, he was asked during the hearing how his mental health issues were impacting him, and that's when he took the time to read a written statement and discussed, in context, he says that basically that his mental health had impacted him substantially because it had impacted his alcoholism, which had impacted his whole situation, but he goes on to speak at length to his rehabilitation, his desire to be free from alcohol, and it's relevant evidence that the immigration judge took and considered as evidence to the discretionary merits of his application for cancellation of removal. He also presented a lot of other relevant evidence, and he actually met his burden of proof for all the statutory elements. He showed... Well, he had already done that before, though. Right, when he had had counsel, right, but then he had to update it, and he presented the testimony of his wife and was able to continue to meet it. It is a continuing application, and the judge found again that his wife had the requisite hardship. Do you think that he's covered by Franco Gonzalez or only by MAM? He is only covered by MAM because Franco Gonzalez, the implementation plan order, specifically defines class membership as individuals who are detained and unrepresented as he was, but who are suffering from a serious mental disorder or defect that may render them incompetent, and then specifically defines serious mental disorder or defect. But not because of the dates. Not because of the dates, because there's a certain list of... Under the Franco class action, everyone is required, every detainee is required to be screened by mental health and then receive, if necessary, receive a diagnosis, but that diagnosis, the Franco implementation order emphasizes that that's for the purpose of treatment. However, if someone receives a diagnosis that's on the list that gets them into the Franco class, then the mental health provider notifies the ICE attorney who has to file something with the court saying this person is a class member. It's not this person may be, we're going to argue about it. That diagnosis automatically makes the person a class member, but that list of diagnoses in the Franco implementation plan order don't include PTSD or situational depression. So his diagnosis simply didn't put him in the class. Now, he could have become a class member even apart from one of those diagnoses if the immigration judge had a bona fide doubt. And that's why on remand at multiple master calendar hearings, she's talking to the DHS attorney and says, do you have evidence of his mental health diagnosis, because I have no doubt. That's not her expressing frustration. It's her understanding that whether or not she has a bona fide doubt is one of the ways he could become a Franco class member. And she did it. The bona fide doubt is supposed to be informed by observations and interactions. And it recognizes that someone even apart from one of those diagnoses might just be acting off, might just seem, the immigration judge might have these doubts, and then it gives the immigration judge a mechanism. If we're talking MAM, what standard would be applicable under that? Under matter of MAM, if there are indicia of incompetence, then the immigration judge has an obligation to address the competence on the record, find whether or not the person is competent and address any safeguards. That's why this case was originally remanded, because there was that diagnosis of PTSD, and the immigration judge had simply not addressed it. Now, he had been represented by counsel, but she still had that obligation under MAM to articulate her assessment of whether safeguards were necessary. So you're saying in this case, at the earlier proceeding, there was an indication. Is that what's required? Under MAM, it's called indicia. So it met that threshold MAM test, right? What has to be done to comply with MAM? She has to assess his competence, ask questions. It's not a rigid formula, but she just at the time of his hearing. Now, she did it at the master calendars leading up to some extent, because she's interacting with him, asking him. But why didn't she have an obligation or the DHS lawyers have an obligation to bring in his medical records? They have them. He's been in detention all this time. It just seems a very strange way. Was the only thing that was submitted, was this 2014 review, was that the only thing that was submitted? After the remand. There was the prior one, but that's the most recent one, yes. And was that requested by anybody, or was just what they brought in? The immigration judge requested mental health information, and that is what the DHS brought in. And what they gave him was completely incomplete. Doesn't it make it worse, in other words, that she kept asking for it, and the only thing she gets is a year old at the time of the final decision? It was after the remand. What it means is that they have an obligation to present what's relevant and changes, and he can also present that. Certainly, they could have filed all of his medical records, and I kind of wish they had. Did he have an obligation? Not an obligation. He has an ability, should he so choose, but not an obligation. Are you sure he's got access to those? I don't know, that's why I'm asking. I'm not 100% positive, but I believe so. It's him going for treatment before the mental health providers in the facility, and I believe he would be able to request and submit his records, but I don't know what hoops he would have to jump through in order to do so. Let me ask you one more thing. The BIA says he didn't raise this with the BIA, the competence question. That didn't seem like a fair evaluation, and you don't seem to be standing on it. I'm not standing on that, no. It's hard to follow what he wrote, but he does seem to be raising it. And the Board goes on to address it, and in this Court, if the Board sua sponte addresses it, then we aren't going to argue that he failed to exhaust. So I would argue that the MAM obligation to assess competence and find whether he's meaningfully competent to meaningfully participate, the immigration judge complied with that on remand, and Franco didn't apply because he wasn't a Franco class member. And at the end, he presented relevant evidence as to everything, and the immigration judge, in her discretion, denied his application for cancellation of removal. So thank you very much. Thank you. Respondent mentioned that Petitioner presented testimony of his wife, and while she was available in court and he mentioned that she would be able to testify better to her facts, when the IJ asked if there was anything else he wanted to produce from that witness, his response was silence. While the case can be remanded under either standard. Which seems perfectly wise because there was really no problem, and he failed in that. I'm sorry? I mean, that didn't prejudice him in any way because he prevailed as to her hardship. That's true, Your Honor, which had already been proved in the first proceedings. Right. And so, therefore, there was no – it was perfectly sensible not to put her on. It was because there was nothing to put her on for. Exactly. He wasn't really presenting evidence. The fact that he didn't put her on doesn't prove that he wasn't competent. No, but it also showed that he wasn't able to exercise his real rights in how to present this evidence that would be relevant to his case on remand. I don't understand that. What would have been relevant? I mean, he was already in perfectly good shape on that. A good lawyer would probably not have put her on again because he didn't need to. Perhaps he could have asked her about his condition as well, but he didn't think to do that. Well, that was sort of a weird thing, too, because he was putting a lot of evidence on about her condition and almost nothing about his. But that is probably because he was detained the whole time and he – it was possible – and someone else was getting – collecting the information about her and he was in detention. And this is why what really bothers me here is the absence of his medical records. Exactly. And I don't think he understood what he needed to provide to be able to prevail. The other point is that he would be able to prevail under either standard, whether it be MAM or Franco. And that he couldn't have been able to submit more medical records than what he had access to when DHS is in the sole possession of those records. Well, if he had a lawyer, he probably could have asked him to bring it in. He didn't have a lawyer on the remand, Your Honor. He was pro se. I understand that. Yes, he had a lawyer. Yes. Yes, Your Honor. Thank you. All right. Thank you very much. Thank you both for your arguments in Calderon, Rodriguez v. Sessions. We'll go on to Akerley v. O'Leary.
judges: Tashima, Berzon, Kennelly